# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**-v-**                                                      **Case No.:  8:20-CR-380**

**LUIS MURILLO ASPRILLA**
                                        /

### LUIS MURILLO ASPRILLA'S SENTENCING MEMORANDUM

The Defendant, Luis Murillo Asprilla, by and through his undersigned counsel, responds to the Presentence Report (PSR) and submits this Motion for Downward Departure, and would show:

### FACTS

Mr. Murillo Asprilla is a poor man from Colombia.  He has a fourth (4th) grade education. PSR¶ 52.  He was sent to live with a sister because his mother was unable care of him. PSR¶ 37.   When she married, he was left alone to fend for himself. PSR¶ 37.  He left school because he had to work to support himself.  He started working at age 13.  PSR¶ 37.  He began working at age 13 as fisherman and other fishing related jobs.  He has been a fisherman since then. PSR¶ 53.  He has four children.  He provides for three of them and his sister raised his oldest son who is now an adult.  PSR¶ 40-41.  He tried to earn extra money by re-selling fish. Because he does not earn much as a fisherman, he was enticed to participate in this trip by the money he could earn. PSR¶ 13, 53.

He was offered a job on a go-fast vessel transporting cocaine.  He was offered a great deal

of money for him and he accepted the job in order to better provide for his family.

The organizers of this drug transaction, a drug sale if you will, hired the crew of the go-fast to transport the drugs.  Mr. Murillo Asprilla was hired as a crew member on the go-fast vessel.   He has limited knowledge of the organization that hired him.  He was not involved in planning this trip.  He had no proprietary interest in the drugs.  He had no discretion in his role other than to follow orders of the organizers.  He was paid very little in comparison to the millions of dollars the drugs were worth.  He was merely a pawn in the transport of the drugs.

ARGUMENT

MINOR ROLE/ BASE OFFENSE LEVEL

The base offense level is set at 36 based on the total quantity of drugs that was seized. The computation is incorrect because Mr. Murillo Asprilla was at most a minor participant in this case and should be set at a base offense level of 33.  U.S.S.G. § 2D1.1 (a) (5) (2018).

The Sentencing Commission since at least 2002 has issued a number of changes to the mitigating role adjustment as it related to drug offenses.  Culminating in the most recent changes found in U.S.S.G. §3B1.2 Application Note 3(C) (2018).  These changes have been an attempt by the Commission to clarify those individuals that should benefit from the mitigating role adjustment.  The most recent change was made because the Commission believed that the adjustment was not being applied uniformly among the Circuits and, more importantly for Mr. Murillo Asprilla, not as frequently as it had intended.  *See,* U.S.S.G. Appendix C, amend. 794.  Below is a review of these changes.

 In November 2002 the United States Sentencing Commission amended U.S.S.G. § 2D1.1 to establish that the offense level for individuals in drug cases that were granted a mitigating role

in the offense would be a level 30. U.S.S.G. § 2D1.1 (a) (3)(2002).  The reason for this change was the following:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders. . . .
>
> . . . the amendment modifies § 2D1.1 (a) (3) to provide a maximum base offense level of level 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role).  The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and a have a lower degree of individual culpability (e.g. "Mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).
>
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in § 2D1.1 overstate the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under § 3B1.2. The commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appendix C Amend 640.

A minimal participant adjustment applies to defendants "who are plainly among the least culpable of those involved in the conduct of a group."  U.S.S.G. § 3B1.2 Application Note 4.  A minor participant role reduction applies to a Defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal.

U.S.S.G. § 3B1.2 Application Note 5.  Application note 3(A) states that the section provides "adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable that the average participant." U.S.S.G. § 3B1.2 Application Note 3(A).

The seminal case is *USA v. Rodriguez de Varon*, 175 F3d 930 (11th Cir 1999).  In that case, the defendant was caught smuggling heroin she ingested.  She was charged with the amount of drugs she was actually carrying.  The court stated that it did "not create a presumption that drug couriers are never minor or minimal participants, any more than they are always minor or minimal." *Id*. at 943.  The court held that the district court was required to "assess all the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense." *Id*.    The court set a two prong analysis to be used in determining whether an adjustment for minor participant is warranted. *Id*.   "First, and most importantly, the district court must measure the defendant's role against the relevant conduct for which she was held accountable at sentencing. . . .  Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct. *Id* at 945.

> In making the ultimate finding as to role in the offense, the district court should look to each of these principles and measure the discernable facts against them.  In the drug courier context, examples of some relevant factual considerations include: amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution.

*Id*..

The guidelines adopted the approach in *Rodriguez de Varon* in determining if a person qualified for a mitigating role because it did "not automatically preclude a defendant from being considered for a mitigating role adjustment in a case which the defendant is held accountable under §1B1.3 solely for the amount of drugs the defendant personally handled."  U.S.S.G.

Appendix C Amend 635.

> The substantive impact of this amendment. . . is to provide , in the context of a drug courier, for example, that the court is not precluded from considering a §3B1.2 adjustment simply because the defendant's role in the offense was limited to transporting or storing drugs, and the defendant was accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored.

*Id*.

In 2004, the Commission amended U.S.S.G. § 2D1.1(a)(3) making the reduction in base offense level for defendants that receive a mitigating role adjustment graduated.  The amendment changed the base offense level from 30 to 34 for cases in which the Drug Quantity Table set the base offense level at 38. U.S.S.G. § 2D1.1 (a) (3)(2004).[1]  The Commission made this change because of proportionality concerns with an across the board reduction to level 30 irrespective of the offense level as determined by the Drug Quantity Table. U.S.S.G. Appendix C Amend 669.

The United States Sentencing Commission made its most recent changes to U.S.S.G. § 3B1.2 effective November1,  2015.   The changes to Application note 3(C) are as follows:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>> (I) the degree to which the defendant understood the scope and structure of the criminal activity;
>> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be

---

[1] The graduated scheme is found in the current guideline manual at U.S.S.G. §2.D1.1(a)(5) (2018).

considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal
activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

U.S.S.G. § 3B1.2 Application Note 3(C) (2016).

The changes in the guidelines were made because the Sentencing Commission found that the adjustment was applied inconsistently and more sparingly than it intended. *See* U.S.S.G. Appendix C, amend. 794.

The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

The most recent changes made by the Sentencing Commission to the factors to be considered for a mitigating role adjustment further explain *Rodriguez de Varon* and its reasoning. *See U.S.A. v Cruickshank*, 837 F3d 1182, (11th Cir. 2016). The Eleventh Circuit has continued to give guidance on the adjustment and the most recent changes. In *Cruickshank*, the Eleventh Circuit stated that the court should look at the totality of the circumstances and that drug quantity alone could not preclude a defendant from receiving the adjustment. *Id at 837.* In *U.S.A v. Monzo*, 852 F3d 1182 (11th Cir 2017), the court looked at a number of factors that established Monzo was not merely a low- level courier. The court noted that Monzo packaged and mailed

the drugs and that he directed the sellers to deposit the drug proceeds in certain bank accounts. These were factors that showed he was more that a mere courier.   Arguably, these cases weigh in favor of  Mr. Murillo Asprilla.   While the quantity of drugs is large, that fact alone should not preclude him from receiving the adjustment.  Unlike in *Monzo,* Mr. Murillo Asprilla was not involved in any other manner other than transporting the drugs for the people who paid him.

In light of the history of the Commission's changes to the mitigating role adjustment and, in particular the changes in the Application Note 3(C), Mr. Murillo Asprilla should receive a mitigating role adjustment for being a minor participant.   These changes weigh in Mr. Murillo Asprilla's favor because he was a crew member of a go-fast vessel transporting drugs.  Mr. Murillo Asprilla was not aware of the scope and structure of the organization. (factor i).  He did not participate in planning or organizing this trip ( factor ii); he had no decision-making authority or have influence over decision making ( factor iii).  He had no discretion, he did as he was directed by the organizers. (factor iv).   Mr. Murillo Asprilla was paid very little in comparison to the value of the drugs (factor v).

Additionally, the last two paragraphs of the changes support giving Mr. Murillo Asprilla the adjustment because of his role in this case.  As the second paragraph states,  a defendant who, like Mr. Murillo Asprilla, does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.  He should receive an adjustment because he is less culpable than the average participant.  A person, like Mr. Murillo Asprilla, who just performed tasks as he was directed is a minimal or minor participant.  He should not be held responsible to the same degree as the organizers of this trip; the financiers; the owners of the drugs; and the buyers of the drugs.  All of those individuals are more culpable than Mr. Murillo Asprilla.  To do so would effectively make

the mitigating role adjustment meaningless.   Thus, Mr. Murillo Asprilla should receive an adjustment for mitigating role.  If granted, the Total Offense Level would be 26 with a range 63 to 78 months under Mr. Murillo Asprilla's Criminal History Category.

SENTENCING FACTORS TO BE CONSIDERED

In determining a reasonable sentence the court must consider the factors in 18 U.S.C. §3553 after calculating and considering the sentencing guidelines. *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007).

**1. Nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Murillo Asprilla became involved in this activity, as many people do, out of need. He did so in an attempt to provide his family.  He was raised in poverty.  He attended school until only the fourth grade because of his poverty.  Mr. Murillo Asprilla began working at a very young age.  In light of these factors, this court should impose a sentence of 63 months which is the bottom of the advisory guideline range with a two-level variance.

**2.  The need for the sentence imposed**

A. To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment;

B. To afford adequate deterrence to criminal conduct;

C. To protect the public form further crimes of the defendant;

Mr. Murillo Asprilla acknowledges the mistake he made and the impact it has on his family and himself.  A sentence of 63 months would be adequate deterrence and would protect the public from further crimes of the defendant.  Further, sentence of 63months would be just punishment in light of his role in this offense.

**3. The kinds of sentences available;**

A sentence of 63 months is available in this case.

**4. The kinds of sentence and the sentencing range established;**

A sentence of 63 months is the bottom of the advisory guidelines.

**5. Any pertinent policy statement;**

In light of the United States sentencing Commission's changes to mitigating role adjustment, it is clear that the policy statement of the Commission is that the mitigating role adjustments should be applied to defendants like Mr. Murillo Asprilla more often.

**6. The need to avoid unwarranted sentencing disparities.**

Sentencing Mr. Murillo Asprilla to 63 months imprisonment should not trigger any arguments of sentencing disparity in light of his role in the offense

**7. The need for restitution.**

There is no restitution in this case.

CONCLUSION

For the foregoing reasons, and pursuant to the authority stated above, Luis Murillo Asprilla respectfully requests that this Honorable Court grant his objections to the PSR and to grant the requested variances to the guidelines.

Respectfully submitted,

/S/ Pedro L. Amador, Jr.
Pedro L. Amador, Jr.
Florida Bar No.: 0007330
P.O. Box 26427
Tampa, Florida 33623
Telephone: (813) 477-4242
Email:  pamador@amadorlawfirm.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was furnished via

electronic filing to Special Assistant United States Attorney Tereza Zambrano Ohley, 400 N.

Tampa Street, Suite 3200, Tampa, FL 33602, this 9th day of September, 2021.

/s/ Pedro L. Amador, Jr.
PEDRO L. AMADOR, JR.
Attorney at Law
Florida Bar No.: 0007330